377 P..2d 1020

**TRINITY UNIVERSAL INSURANCE COMPANY, a corporation, Appellant,**

v.

**R. W. EVANS and E. J. Cyr, Appellees.**

No. 6992.

Supreme Court of Arizona,

In Division.

Jan. 24, 1963.

Moore & Romley, Phoenix, for appellant.

Snell & Wilmer, Phoenix, for appellees.

E. R. THURMAN, Superior Court Judge.

Trinity issued a policy insuring Evans' Caterpillar Tractor for damage caused by collision of any conveyance upon which the tractor was being transported. The trailer on which the tractor was being transported left the road and went down an embankment. When it hit, the chains holding the tractor broke and it fell off the trailer. The court made findings of fact and entered judgment for plaintiff.

The question is whether the circumstances of this loss come within the meaning of "collision" in the policy.

Appellant insurance company was defendant in the trial court in a suit to recover for accidental damage to a Caterpillar tractor owned by plaintiffs and insured by them with the defendant. The trial judge heard the case without a jury and rendered a judgment for the plaintiffs for $5,534.60 and costs, and the defendants have appealed to this court.

Plaintiffs wished to transport a Caterpillar tractor from one work site to another. Before doing so they purchased transportation insurance from the defendant. The risks covered by the policy of insurance were as follows:

"To pay for direct and accidental loss of or damage to the Caterpillar, hereinafter called loss, caused * * * (c) by the stranding, sinking, burning, collision or derailment of any conveyance upon which the Caterpillar is being transported."

The said Caterpillar was damaged while being carried on a flat-bed trailer of a Diesel tractor-trailer rig, and the Caterpillar was tied down thereto with chains. While the Caterpillar was being so transported on the highway the flat-bed truck-trailer came to a place where the highway ran downhill and as it started down the frame of the trailer broke, and the weight of the load went down on the back of the truck which, in turn, lifted the front wheels, making steering by the driver impossible; and at the same time the breaking of the trailer frame cut the air lines, leaving the entire rig without brakes. The driver of the rig could neither steer nor stop. He slowed the rig to 12–13 miles per hour by shifting down but the rig left the road and went into a ravine about 20–25 feet deep. When the front end of the rig hit the bottom of the ravine, the Caterpillar was torn loose from its chains,

rolled over and was damaged when it land-ed on rocks in the bottom of the ravine. The rig did not turn over.

The driver testified unequivocally that the rig thereupon suffered a collision in coming to a stop:

"Q. Did the tractor (i. e., the diesel) leave the road?

"A. Yes, it left the road—

"Q. All right.

"A. It went down in this—

"THE COURT: The tractor?

"MR. PERRY: That would be the tractor he was driving, Your Honor, not the D–8 Caterpillar.

"THE COURT: Oh.

"A. It went down in this gulley, and when the front end hit the bottom, the impact of it broke the chain that holds the cat. You know, there is a chain you tie across the back and put chain binders on them, and it was tipping at about a level like that (the witness il-lustrating).

"MR. PERRY: Now the witness has indicated a tilt with his hand.

"Q. About how many degrees of tilt would you say that was when you are talking about the trailer?

"A. It was quite a bit; over 45 any-way. And then when it hit, that broke the chain, and the cat went down in the canyon and hit into this bunch of boulders and turned over.

\* \* \* \* \* \*

"Q. Now, Mr. Crockett, when you say that the entire unit tipped over this fill or hill, you don't mean that the whole unit tipped over, do you?

"A. No, the truck and trailer never did turn completely over, but when the truck hit the bottom of the wash, the trailer was still up kind of near the road, see, but it was setting at a slope, you know—

"Q. Yes.

"A. —and when the front hit, the chain broke, and the cat rolled over and went down in the gully, and the rocks.

"Q. Well, Mr. Crockett, didn't the—

"THE COURT: Just a moment, Mr. Crockett, when the front end hit what?

"A. It hit the bottom of the wash, Judge. You see, when the truck went down, the front hit the bottom of the wash, and it was setting tipped like that. Well, the impact, I guess broke the chain, which let the cat turn over off of the trailer, see. \* \* \*"

Based on the foregoing facts the trial judge made the following findings of facts:

"On or about October 30, 1956, the said 1953 D8 Caterpillar Tractor was

**12**

being transported on a motor truck from Hillside, Arizona, to Prescott, Arizona. During the course of said transportation from Hillside to Prescott, the frame of the truck upon which the said 1953 D8 Caterpillar tractor was being transported broke, permitting the weight of the truck to sag and thereby rendering steering of the truck impossible, causing the truck to run off the roadway and down an incline, as the direct result of which the said D8 Caterpillar Tractor was torn from said truck and the said D8 Caterpillar Tractor then collided with rocks, boulders and other like materials in the ravine *into which it was propelled by the said collision of the said truck on which it was being transported.*" (Emphasis supplied.)

The insurance company claims it is not liable because the damage to the Caterpillar was not caused by a "collision" of the transporting vehicle as required by the insurance policy. The first question, then, is whether a truck that runs off the road into a ravine and hits the bottom of a ravine has been involved in a collision.

A similar question was involved in Southern Casualty Co. v. Johnson, 24 Ariz. 221, 207 P. 987, in which plaintiff was suing defendant insurance company for damage to his car. The car had been damaged when he was cut off by a passing car in such a manner that in order to prevent being run into the car was swerved to the right. The appellee contended that the car ran into an embankment that was almost perpendicular, and the car was thereupon overturned. This court said:

"The conclusion reached, therefore, is determinative of the insurer's liability, because recovery is sought solely under the provision of the policy rendering the insurance company liable for damage to the automobile 'by being in accidental collision * * * with any other * * * object,' and necessarily a finding that 'the automobile accidentally collided with an embankment of earth, * * * and as a result thereof it was damaged,' establishes liability, while a finding that the damage resulted from an upset or tip-over caused by the automobile's being run 'upon and along or over' an inclining embankment, as claimed by appellant, would not, according to the authorities, bring the accident among those insured against, for the reason that an upset and collision are not regarded as the same." 24 Ariz. at 224–225, 207 P. at 989.

We see little difference in an automobile being held to have a collision when it collides with an embankment on the side of the road from a situation where the automobile goes down one side of a ravine and is stopped when it strikes the bank on the other side.

We hold, therefore, that there were sufficient facts to support the trial judge's finding that the rig was involved in a collision and that the Caterpillar was thrown from the rig because of the collision. The damage was covered by the policy.

In Southern Casualty v. Johnson, supra, this court stated:

"As used in this policy, the word 'collision' has its usual meaning of 'striking together, or striking against,' and includes the case of an automobile striking against any other object, whether that object be standing or in motion, or whether it be another automobile, vehicle, some similar object, or something altogether different, because the rule of *ejusdem generis* does not apply, but rather the exception to it, which gives general words following particular words including all of their class a meaning different from that of the specific words."

Along with the reasoning of this court in the Southern Casualty Co. v. J. F. Johnson case the Supreme Court of Hawaii in Sutherland v. Hawaiian Insurance & Guaranty Co., Ltd., 29 Haw. 101 at page 108 in interpreting an insurance policy which provides for indemnity against loss by reason of damage to or destruction of the automobile caused solely by accidental collision with another object, either moving or standing wherein the court stated that the part of the clause relating to objects was very broad and expressly includes all objects whether moving or stationary, and by implication includes all objects whether on the road or outside of the road, and if the insurance company had desired to limit its liability to objects within the road it should have said so in its policy. In other words, if the appellant in the case before us had desired to limit its liability to specific classes or conditions of collisions, it should have done so.

It is admitted by appellant that the finding of the trial judge contains the following language:

"* * * the said D8 Caterpillar Tractor then collided with rocks, boulders and other like materials in the ravine *into which it was propelled by the said collision of the said truck on which it was being transported.*" (Emphasis supplied.)

Appellant claims, however, that the underscored part of the finding was not deleted by the trial judge because it was overlooked. Appellant claims that it was not called to the attention of the trial judge because the finding "seemed clearly to express the court's intention." Appellant has cited no cases to support the proposition that a finding of the trial court included without objection of a party may be challenged by that party on appeal on the ground that it was inadvertently included.

Appellant argues also that the trial court found that an agent of the company acted

**14**

in such a manner that the company is estopped from denying coverage. As we have decided that the damage to the Caterpillar resulted from a collision between the rig and the bank of the ravine, it is not necessary to decide this question.

BERNSTEIN, C. J., and JENNINGS, J., concurring.